### GRAFF M. ACKLIN V. BELVIE W. WALTERMIER ET AL.

1. CHATTEL MORTGAGE ON LEASEHOLD INTEREST INVALID.

A chattel mortgage on "all the working interest in the gas and oil leasehold interest in the following discribed lands," together with "all machinery, tools, material and outfit of said wells on said lease," filed with the township clerk is valid as to the chattel property, but is invalid as to the leasehold interest in the lands. A mortgage of such leaseholds, to be valid as against third persons, must be executed, filed and recorded as are real estate mortgages, in view of the provisions of secs. 4106, 4133 and 4134, Rev. Stat., requiring "a mortgage of any estate or interest in real property" to be "signed, sealed, acknowledged and recorded in the office of the county recorder."

2. ESTATE CREATED BY SUCH LEASE A CHATTEL REAL.

A leashold interest, created by an oil and gas lease for a term of five years and so much longer as oil or gas or other valuable substances be found and

developed upon said premises in paying quantities, does not rise to the dignity of a freehold estate, but amounts simply to a leasehold for years or a chattel real. The duration of the lease is immaterial, so long as it is determinate and there is a reversion or remainder in fee to some other person.

**3. SUCH MORTGAGE NEED NOT BE RECORDED IN LEASE RECORD.**

A mortgage of a leasehold interest, acquired under an oil and gas lease, is not within sec. 4112a Rev. Stat., requiring oil and gas leases to be filed with the recorder and recorded in the lease record.

**4. MECHANIC'S LIEN ATTACHES TO LEASEHOLD.**

A mechanic's lien attaches to a leasehold interest conveyed by an oil and gas lease as well as to the particular property which has been produced and improved by the labor or materials of the mechanic or material man.

**5. LEASEHOLD NOT INCLUDED IN LANDS OR TENEMENTS.**

A leasehold interest or chattel real, as above defined, is not within the term "lands or tenements" as used in sec. 5374, 5375 and 5383, Rev. Stat., providing for the manner in which judgment liens shall attach; and such interest must, therefore, be levied upon in order that the lien of a judgment be acquired.

**6. LEASEHOLD MAY BE SOLD AS A CHATTEL.**

Leasehold interests in real estate are subject to seizure and sale under execution as chattels, notwithstanding the provisions of the statutes as to how such property may be encumbered.

**7. LEVY DOES NOT ATTACH TO UNPRODUCED OIL.**

A levy upon the leasehold interest and the oil well machinery, does not attach to the oil which has not been produced; and a mortgagee having taken possession and operated the premises and reduced the oil to his possession, acquires the first right thereto.

**8. SHERIFF NOT REQUIRED TO TAKE POSSESSION.**

It is not essential to a valid levy upon a leasehold interest that the sheriff should take possession of the premises, notwithstanding the levy is made as upon a chattel interest. A levy made by going to the premises and there declaring to the debtor that he levied upon the property, with due return thereof, is sufficient.

**9. LEVY UPON CHATTELS.**

A levy upon derricks, machinery, etc., of an oil well is valid, at least against the debtor, without the sheriff taking possession or putting a man in charge of the property.

APPEAL from Court of Common Pleas of Wood county.

PARKER, J. (orally)

This case is here on appeal. The action is brought by the plaintiff to foreclose a chattel mortgage. He sets forth in his petition that the defendants Waltermier and Bunnell on November 20, 1896, made and delivered to him their certain promissory notes (setting forth the notes), representing an indebtedness of something over seven thousand dollars. The petition also sets forth that at the same date, to secure said notes, the makers thereof executed and delivered to plaintiff their chattel mortgage on property described as follows:

"All the working interest in the gas and oil leasehold interest in the following described lands, to-wit: The southeast $\frac{1}{4}$ of the northwest $\frac{1}{4}$ of sec. 23, Henry township, with eleven oil wells, three boilers, three 12 H. P. engines, two engines, one power set up, five oil tanks, and all other tanks, derricks, pumping outfit, oil, gas, water and steam lines, and all machinery, tools, material and outfit of said wells on said lease."

The petition also sets forth that this mortgage was filed with the township clerk of Henry township on December 17, 1896, and refiled on November 19, 1897, and that it is now in full force, and a valid lien on said property.

John Neil, one of the defendants, files an answer and cross-petition upon a chattel mortgage given by Waltermier and Bunnell upon the same property, which mortgage was filed with the township clerk of Henry township on July 6, 1898, and is for $1221.22.

William H. Free files an answer and cross-petition, averring that he is entitled to a lien upon the premises and property, or the interest of Waltermier and Bunnell in the property, by virtue of an account for work and labor performed, and material furnished in the sum of $165.00, part of which was for the construction and repairing of shackling and power, and part of it was for rebuilding three rigs.   November 30, 1897, is the day the first work was performed.   The lien was perfected March 29, 1898, as required by statute, and attached as of November 30, 1897. It was conceded upon the hearing that some part of this (I think per- haps the shackling and power) is new construction, put in since plain- tiff's mortgage was given, and that this mortgage would not cover that. Counsel agreed upon how much of this account is chargeable to such new construction, and how much is chargeable to the old, and the decree will be framed accordingly.

The National Supply Company files an answer and cross-petition setting forth that it recovered a judgment in the court of common pleas of Wood county for $154.00 and costs against Waltermier and Bunnell, and that it caused an execution to be issued and levied upon this prop- erty on April 8, 1898.

This cross-petition is somewhat peculiar in some of its averments. Defendant says it caused a levy to be made, and also states that the property was an equitable character, so that it could not be subject to a levy, and then follows an averment that "because it is of that nature, it is not subject to a chattel mortgage."

The Hercules Torpedo Company also files an answer and cross- petition, setting up that it recovered a judgment in the court of common pleas of Wood county on July 19, 1898, for $351.90, against these defend- ants Waltermier and Bunnell; that it caused an execution to be levied on this same property on July 19, 1898; and it contains an averment that the property is encumbered by a chattel mortgage, whereby it is necessary to come into court to have the liens marshalled.

There has been some question made as to what was done in pursu- ance of these alleged levies, as to whether the levies were valid levies. We find that the sheriff went to the premises, and there declared to the debtor that he levied upon the property, but he did not take posesssion of any of the property, nor of the premises, nor leave anyone in possession as his representative.   He made return that he "levied," etc.

It becomes necessary for us in determining the question involved here, to give some consideration to the nature of the interest of Walter- mier and Bunnell in this real estate held under and by virtue of the lease. It is an oil and gas lease, so-called, and is recorded in volume 30, page 90, of the lease records of Wood county, Ohio.   It is in the usual form of such instruments, and reads in part as follows:

"Contract executed this seventh day of May, A. D., 1886, between B. A. Lawrence, of Wood county, state of Ohio of the first part, and

P. Parke, William Dukes and George Chambers o the second part: Witnesseth, That the first party ior the consi.ieration hereinafter stipulated and agreed upon does hereby grant to said second party, their heirs and assigns the right to enter upon the iollowing lands and premises now owned by said first party and situaled in Henry township, Wood county, Ohio, to-wit"—then follows a detailed description ot the land being 240 acres—"for the purpose and with the exclusive right in and upon said premises to drill and develop oil, gas and other valuable substances. In consideration whereof it is agreed, First:" And then follows the provision as to the share of the oil that the owner of the premises is to have, and a provision as to what shall be done with the pipe lines, and then follows this provision: "It is hereby agreed by and between the said parties, their heirs and assigns, that the ioregoing rights and privileges herein granted and conveyed shall continue and be in force for five years from the date hereof, and so long as oiJ, gas or other valuable substances be found and developed upon said premises in paying quantities," and then follow other provisions not necessary to read here. The instrument is signed by the parties, and acknowledged before a notary public.

The principal contention is between the plaintiff, claiming under the chattel mortgage on one hand, and The National Supply Company and The Hercules Torpedo Company, claiming under their judgments and levies, on the other hand, and this is to be determined by the effect to be given to the chattel mortgage, and the judgments and levies.

There is no question about the dates of the different transactions. If the chattel mortgage is properly executed and filed to give a lien, then the plaintiff stands ahead. If it constitutes a valid lien as to part only of the property, then the plaintiff stands ahead as to that part. If it is not a valid lien as against the judgment and execution creditors as to any part, then the question still remains whether they have obtained valid liens under their judgments and levies; for there can be no question but this is a valid mortgage as between the mortgagor and mortgagee, and since the alleged levies the mortgagor has put the mortgagee in possession of the premises and property.

We are of the opinion, after an examination of many authorities, that this mortgage is not valid and effective as to the leasehold interest, but that it is a valid lien upon the other chattel property. This leasehold is a chattel interest—a chattel real, and yet we think that it is such an interest in real property as that, under secs. 4106, 4133 and 4134, Rev. Stat., a mortgage thereof, to be effective as to third persons, must be executed with the formality required of mortgages of real estate, and must be filed and recorded as a real estate mortgage with the recorder of the county. Those sections provide that "A mortgage of any estate or interest in real property shall be signed, sealed, acknowledged and recorded in the records in the office of the county recorder."

In Paine, Kendall & Co. v. Mason, 7 Ohio St., 199, a question somewhat like this was before the Supreme Court, and it was there held that: "A mortgage of a leasehold for a term of ten years, accompanied by possession held under an instrument in writing not witnessed or recorded, comes within the terms and policy of the act of February 22, 1831, 'to provide for the proof, acknowledgment and recording of deeds and other instruments of writing,' and when executed and recorded in conformity with the provisions of that act, takes precedence over a prior

Acklin v. Waltermier.

mortgage not thus executed or recorded." The prior mortgage in that instance was in the form of a chattel mortgage filed with the township clerk. The language of the statute at that time, as quoted in the opinion on page 203, was "that when any man, etc., shall execute, within this state, any deed, mortgage, or other instrument of writing, by which any land, tenement, or hereditament shall be conveyed, or otherwise affected, or incumbered in law, such deed, mortgage, or other instrument of writing, shall be signed, witnessed and acknowledged in the manner therein prescribed."

Judge Brinkerhoff in page 203, in the case cited, says:

"The terms, land, tenement, or hereditament, in the strict legal acceptation, do not, it would seem, embrace any less or lower estate than one of freehold; an estate for years being but a chattel real. If, therefore, the first section of the act above referred to had provided for nothing but the conveyance of lands, tenements, or hereditaments, the leasehold estate ot Butts would not, perhaps, have come within its provisions. This however is not clear. Johnson v. Stagg, 2 Johns., 521. But the terms of the statute are broader than this. The language is 'any deed, mortgage, or other instrument of writing, by which any land, tenement, or hereditament shall be conveyed, or otherwise affected, or incumbered in law.' "

In our judgment the term "A deed, mortgage or lease of any estate or interest in real property" are sufficiently comprehensive to include any instrument and any estate or interest covered by the statute there under consideration.

In Gaylord, Son & Co. v. Cincinnati German Building Assn., 2 C. S. C. R., 163, the syllabus reads: "A mortgage of a lease for more than three years, executed according to the provisions of the act of February 22, 1831, entitled an act to provide for the proof, acknowledgment, and recording of deeds and other instruments of writing, may be properly recorded under section 7 of said act, and it is not necessary to file said mortgage with the chattel mortgages in order to give notice to third parties."

The question there, as I now remember the case, was not between one holding a chattel mortgage and one having a real estate mortgage, but was between the latter and one who had levied under a judgment and execution, but it will be observed that the holding is in accord with Paine, Kendall & Co. v. Mason, *supra*. It seems to have been doubted by the Cincinnati superior court whether this decision of the Supreme Court entirely reached the case. However, the superior court held that a mortgage upon an interest of that sort must be executed and recorded as a real estate mortgage.

Another case of the same character is Miller v. Bank of Toledo, 1 Dec. Re., 392. This was before Judges Hitchock and Caldwell, and the bill, anwer, and proof showed the following facts: On October 25, 1848, William Krauss & Co., executed a mortgage to C. R. Miller (which was afterwards assigned to complainant) on a leasehold interest in forty-seven feet of ground in Toledo, the lease running ten years, together with the buildings erected thereon by the lessee, the mortgagor, to secure a debt of $4,000. This mortgage was executed after the form of a real estate mortgage, and recorded in the record of deeds at the recorder's office. On July 10, 1849, the Bank of Toledo obtained a mortgage from Krauss & Co., upon the same property to secure a debt of $5,000, and

filed a copy thereof in the town clerk's office, treating the former mortgage as not filed according to law. The bank took possession of the mortgaged property, and the bill was filed to foreclose and sell. It was proved that at the same time the bank took the mortgage they had full knowledge of the existence of the former mortgage. Held:

"1. That the mortgage to Miller was an instrument by which land was affected and incumbered in law, and came within the provisions of the law relating to the recording of deeds and other instruments of writing, and was properly recorded in the recorder's office.

"2. The statute relating to the mortgages of personal property, relates only to goods and chattels strictly, not to fixed property, like leasehold interests in lands or chattels real;" and the court proceeded also to hold that the bank was affected by the notice.

Now, the same result would follow in this case if we were to hold that these instruments must be recorded in the records of oil and gas leases as provided by sec. 4112-a, Rev. Stat., and we think there is some force in the argument that it was the intention and purpose of the legislature to have all instruments affecting lands for oil and gas purposes, or affecting oil and gas leases, recorded in one book and one place, or one set of books. But, nevertheless, we cannot find that a mortgage of such a leasehold interest comes strictly within the purview of that act, and we are clear that such mortgage is required to be executed, filed and recorded as provided by secs. 4106, 4133 and 4134, Rev. Stat., and we cannot believe that it was the intention of the legislature to require it to be filed in two different places, or recorded in two distinct records. We hold that a mortgage of such interest is effective as to third persons when it is filed as required by the statute on the subject of conveyances and incumbrances of real estate.

That does not determine the question whether this leasehold interest in this property is to be treated as land or as chattel with respect to judgments and levies. We regard this interest of the second party under this oil lease as being in the nature of a leasehold for years. It is for a term of five years, with an uncertain period to follow if oil and gas is found in paying quantities; but this uncertain period may be made certain by the effects of the venture. It is nevertheless but a term of years, and does not rise to the dignity of a freehold estate, and is but a chattel interest; and if it were not for the express provisions of sec. 4134, Rev. Stat., on the subject, we would suppose it would be subject to a chattel mortgage.

Now the nature of an estate for years is described and defined in the text books generally, substantially as it is in Kent's Comm.; I have before me an extract from 2nd Kent, page 342, which I will read:

"Chattel is a very comprehensive term in our law, and includes every species of property which is not real estate or a freehold. The most leading division of personal property is into chattels real and chattels personal. Chattels real are interests annexed to or concerning the realty, as a lease for years of land; and the duration of the term of the lease is immaterial, provided it be fixed and determinate, and there be a reversion or remainder in fee in some other person. It is only personal estate if it be for a thousand years. Falling below the character and dignity of a freehold, it is regarded as a chattel interest, and is governed and descendible in the same manner. It does not attend the inheritance, for, in that case, it would partake of the quality of an

estate in fee. And, as pointed out in the authorities, though a life estate may in the nature of things be for a short period as compared with the period an estate for years may be made to run, the leasehold interest is nevertheless a chattel interest, and does not rise to the dignity of a freehold estate, as a life estate does.''

And we hold therefore, that this interest is not within the term "land or tenements,'' as used in secs. 5374, 5375, and 5383, Rev. Stat.: That this is such an interest as must be levied upon in order that a lien upon it of a judgment debt may be acquired. It is urged by one of the counsel here that the word "tenements'' covers this interest, but we think it is distinctly indicated by the Supreme Court in Paine, Kendall & Co. v. Mason, *supra*, that they did not regard that term as covering a term of years; and in Barr v. Doe, 6 Blackford, 335, which is also found in the 38 Am. Dec., 146, it is held that a term of years does not come within the description of tenements.

It is there held that a term for years may be sold on a justice's execution, and after considerable discussion of the matter the court say this at the bottom of page 146:

"It is contended that the fifty-first section of the act, by the use of the word "tenements,'' explains the meaning of the legislature, and shows that the movable chattels only of the debtor were intended to be made liable. We cannot adopt this construction. Tenement is a word of extensive signification, and in the connection in which it is found in the statute, refers to such interests in real estate as are connected with the freehold, and not including the term "chattels.''

Now, the general rules as to the method of bringing this class of property to sale in satisfaction of judgments is laid down in 11 Am. & Eng. Ency., 29, as follows:

"It may be stated as a general rule that leasehold interests in real property are subject to seizure and sale under execution.''

And authorities in support of that proposition are quoted; and they are quite numerous, coming from a great many of the states, a large number of them being from Pennsylvania. The work quoted goes further, and says that such interest may be not only brought to sale under execution, but that it is subject to seizure and sale as a chattel. It is stated that in some of the states, by statute, leasehold interests are to be seized and levied upon as realty, and among many others a number of Ohio decisions are cited. I have examined all the Ohio cases cited, namely: Northern Bank v. Rossa, 13 Ohio, 334; Loring v. Melendy, 11 Ohio, 355; Bisbee v. Hall, 3 Ohio, 449; Reynolds v. Commissioners, 5 Ohio, 204, and find that they are all cases of permanent leasehold estates renewable forever, which came within the express terms of sec. 5374, Rev. Stat., providing the method of bringing such estates to sale. Generally, and I believe without exception, in the states where an estate for years is held as real estate, it is because it is so provided by statute. Under the English jurisprudence such terms for years were levied upon and sold as chattels, and not as real estate. That this property must be brought to sale as a chattel notwithstanding the provisions of the statute as to how it may be incumbered by mortgage, we have no doubt. It will be observed that in Gaylord, Son & Co. v. Building Assn., *supra*, from which I have read. the leasehold interest had been sold as a chattel. No question was made upon it, so that the case can not be considered as direct authority on this point; but there was a question of

priorities, and there was no question but the person who had bought at the sale thus made, acquired a good title to the property.

The question remains as to how a valid levy may be made upon this kind of an interest. What is necessary to be done by the sheriff in order that the levy may be valid? Whether he must proceed as in the case of a movable chattel, or whether his proceedings may be analogous to those pursued in levying upon real estate. We think that the authorities are clear that notwithstanding the fact that he levies upon it as a chattel interest and sells it as such, he is not required to go into possession of the premises, or to put any one in possession thereof in order to make the levy a valid one.

I call attention to a number of cases from Pennsylvania, because some of them are cases of sales of just such interests as this, and because the Pennsylvania State Reports happen to be here at hand. We have examined a great many cases from other states, and they all seem to be in harmony. Certain of the authorities I shall cite, bear, upon the question of how this property shall be regarded for purposes of levy and sale under execution.

Others go to the question how the officer shall proceed to effect a valid levy on a leasehold estate. One case to which I will call attention is Titusville Novelty Iron Works' Appeal, 77 Pa. St., 103, the syllabus of which reads: "A leasehold being a chattel real by reason of its fixed and permanent character, can under an execution be seized and held only as real estate; not as personal goods, susceptible of transportation.

"Second: The sheriff is no more responsible for a leasehold estate levied on than he would be for real estate.

"Third: The levy of a leasehold can be only by description of the realty out of which it issues."

I shall not take time to read now from this decision. Another case is that of Sowers v. Vie, 14 Pa. St., 99, the syllabus of which reads: "Leasehold property need not be sold on the premises. A sheriff's deed for leasehold premises need not be acknowledged, nor is it necessary that there be a deed at all. His return is evidence of the sale of a chattel, whether real or personal." In Williams v. Downing, 18 Pa. St., 60, the syllabus is "A lease for years is the subject of levy and sale on *fieri facias*. It is not necessary that the sheriff execute and acknowledge a deed, to pass the property to the purchaser."

Again in Building Ass'n v. Bolster, 92 Pa St., 123, the syllabus is "A long term of years, of very great value, is not such an interest in land as is subject to the lien of a judgment; it is a chattel, subject to seizure and sale by a constable, on an execution issued by a justice of the peace." In Kline, Sheriff, v. Giebner, 114 Pa. St., 381, the syllabus is "A lease of lands for a term of years may be sold on a *fieri facias* as personal and not real property."

I again call attention to Titusville Novelty Iron Work's appeal, *supra*, from which I have read. That was the sale of an oil lease. That fact may not appear clearly in the report of that case, but in the last case cited, it is mentioned, the court saying: "The case is in this respect similar to the Titusville Novelty Company's appeal, where the levy was upon 'all the right, title, etc.,' of the defendants of, in, and to a certain leasehold estate situate, etc., 'together with the oil wells, engines, boilers, engine houses, derricks, etc. etc., and all the machinery and fixtures belonging to said well and lease.' The levy was not made by

Acklin v. Waltermier.

actual seizure or in view of the property, but in the manner and form of levying upon real estate; this court was of the opinion, however, that the leasehold was such property as was not susceptible of seizure by the sheriff; that the officer could have no manual caption thereof, so as to take it into his personal custody, and hence he was no more responsible for it than for any other interest in real estate. It was therefore held that the levy was good, and that the writ was entitled to the money in preference to a later writ, upon which the levy was made upon the leasehold, the derricks, the engine, etc., etc., separately and in view thereof, as upon purely personal chattels. The doctrine in that case is applicable here.''

That case was an action against the sheriff, he having sold the leasehold interest, and it was held by the court that he was not liable; that he was not required to go into possession of the property, and could not be sued in an action of that character, which was grounded in trespass. The particular lease in Kile, Sheriff, v. Geibner, *supra*, was for saw mill purposes. A saw mill had been erected on the premises. The property was levied upon and sold by the sheriff. Suit was brought against the sheriff by another than the judgment debtor on the ground that he was the true owner and that the sheriff had interfered with his property without lawful warrant to his damage. The court following the Titusville Novelty Company's appeal, held that the action could not be maintained, since it must be grounded on trespass, and the sheriff was not required to enter upon the premises to make a valid levy, etc.

In Maurer v. Sheafer, 116 Pa. St., 339, the lease was for a right to dig, mine and carry anthracite coal from the Bush Mountains and underlying beds for and during the term of fifteen years, and it was held there, that: '' A leasehold estate conferring the right to mine, dig away coal, is a chattel real, and a levy thereupon of a *fieri facias* by the sheriff as the property of the defendant, involves him in no responsibility to others; hence in such case he is not entitled to demand an issue under the interpleader act.'' This proceeds upon the same doctrine, *i. e.*: that actual seizure or possession is not necessary to a valid levy. I cite one old English case, Rex. v. Dean, 2 Show; 85 K. B., 31 and 32, which holds distinctly that a sheriff is not required to take possession in order to make a valid levy on a leasehold interest in property, and also holds that it is to be taken and sold as a chattel. A very instructive case on this point is that of Steers v. Daniel, 4 Fed. R., 587. Now these conclusions are not in harmony in all respects as we well know, with the decisions of the circuit court of the third circuit in Bank v. McConica, 4 Circ. Dec., 106, but these are our conclusions nevertheless; and we have examined the case with more care because of this decision by another court of equal dignity and authority, and for the opinion of which we have great respect.

We are of the opinion that the levy upon the chattels, *i. e.*: the derricks, machinery, etc., was a valid levy at least as against the debtor without the sheriff taking possession or putting a man in charge. As I have said, we hold that this mortgage was good between the mortgagor and mortgagee, and we hold that this mortgage was good as a chattel mortgage upon this chattel property other than the leasehold interest; and as we so hold, it is unimportant to consider the question of validity as to others than the debtor of the levy upon the chattels made under the judgments and executions. These levies, in our opinion, could not

affect the oil which had not been produced, and the mortgagee having since suit begun gone into possession under his chattel mortgage, and having operated the premises and reduced that oil to his possession, we hold that he has the first right to that already produced.

Our conclusions are:

First—That the mechanic's lien attaches and is the first lien upon the shackle rods, power, etc., for the charge of building the same, and is a second lien upon the oil derricks, etc., for the charge of repairing the same, and that the whole amount of the account is the first lien upon the leasehold. Under the statute, a mechanic's lien attaches to the leasehold interest as well as the particular property which has been produced and· improved by the labor or materials, of the mechanic or material man. That question is discussed and passed upon in Devine v. Taylor, 4 Circ. Dec., 248, heretofor decided in this court.

Second—That the chattel mortgage is the first lien upon the derricks and all other property which goes to the equipment of this lease, except the part of the equipment which has been put upon the premises since the chattel mortgage was given, and with respect to which the first lien is given to those entitled under the mechanic's lien, and that the chattel mortgage is the first lien upon all the loose chattels.

Third—That the levies of the executions give a second lien to the execution creditors upon this · newly constructed apparatus upon the premises, and the second lien also upon the leasehold interest (the first lien being given to the mechanics' liens), and that they stand last as to the derricks and other property levied upon.

Fourth—That the mortgagee has the first claim upon the oil produced and the last upon the leasehold by virtue of the possession taken under the mortgage since the levies. Decree will be entered accordingly. In this discussion and these conclusions, no account has been taken of the mortgage to Neil, for the reason that it was not mentioned by counsel on the hearing, and we are not advised as to the present status of this claim; but if it is still a subsisting claim, the principles announced will enable counsel to give to it a proper place in the decree.

---

# STREET RAILWAYS—NEGLIGENCE.

[Ashtabula Circuit Court, 1900.]

Frazier, Laubie and Hull, JJ.

(Judge Hull of the 6th Circuit sitting in the place of Judge Burrows.)